[Cite as *Myers v. Wade*, 2017-Ohio-8833.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Walter Myers,                              :

      Plaintiff-Appellant,          :

                                              No. 16AP-667

v.                                         :          (C.P.C. No. 13JU-4556)

LaTonia Wade,                              :          (REGULAR CALENDAR)

      Defendant-Appellee.           :

D E C I S I O N

Rendered on December 5, 2017

**On brief:** *Cynthia Roy*, for appellant. **Argued:** *Cynthia Roy*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Walter Myers, appeals from a final judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that overruled his objections to a decision and entry adopting a magistrate's decision granting the motion for modification of parental rights and responsibilities of defendant-appellee, LaTonia Wade. For the following reasons, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Myers and Wade are the parents of three minor children. The parties were never married but lived together periodically for 13 years. In 2013, the parties filed a shared parenting plan, which named mother as residential parent for school placement purposes, and father had parenting time every other weekend from 9:00 a.m. Saturday to 8:00 p.m. Sunday, and every Wednesday from 5:00 p.m. until 8:30 p.m. (Dec. 13, 2013 Plan for Shared Parenting.)

{¶ 3}  On June 18, 2014, Wade filed a relocation notice that she was moving to Arizona.  On June 23, 2014, Myers filed a motion for reallocation of parental rights and responsibilities, which he later withdrew on April 10, 2015.  On September 2, 2014, Wade filed a motion for reallocation of parental rights and responsibilities.  On March 24, 2015, Myers filed a motion to modify visitation.

{¶ 4}  The basis for both motions to modify was Wade's relocation to Arizona for health reasons in April 2015.  She received a diagnosis of lupus in 2012 and she testified that the Arizona climate is better for her health.  The parties filed a temporary agreed entry designating Myers as school placement parent and terminating his child support obligation until further order of the court.  From April 2015 until the final order of the court in August 2016, the children lived with Myers in Ohio and Wade lived in Arizona.

{¶ 5}  The matter proceeded to trial on August 12 and 13, 2015.  The magistrate filed a decision on September 16, 2015.  The magistrate's decision ordered continued shared parenting, with Wade remaining as residential parent for school placement purposes and modified parenting time for Myers based on Wade's move to Arizona.

{¶ 6}  Myers filed a request for findings of fact and conclusions of law on September 21, 2015, along with objections to the magistrate's decision.  On June 8, 2016, the magistrate filed a decision that included findings of fact.  The trial court provided Myers an opportunity to supplement his objections.  Myers did so on July 25, 2016.  On August 22, 2016, the trial court overruled Myers's objections and found it to be in the children's best interest to maintain the current plan for shared parenting with Wade as residential parent for school placement purposes.  Myers filed a timely notice of appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 7}  Myers argues two assignments of error for our review:

> [1.] The trial court erred and abused its discretion in designating appellee school placement parent after her relocation to Arizona and said designation is against the manifest weight of the evidence.

> [2.] The trial court's decision to name appellee school placement parent after relocation is contrary to law and not in the best interest of the minor children.

## III.  DISCUSSION

### A.  Second Assignment of Error

{¶ 8}   For clarity and ease of discussion, we address Myers's second assignment of error first.  In his second assignment of error, Myers argues that the trial court's decision is contrary to law and not in the best interest of the minor children for naming Wade school placement parent.  More specifically, Myers argues that the trial court failed to apply R.C. 3109.04(E)(1)(a) properly because any likely harm caused by a change in circumstances of the move to Arizona is not outweighed by the advantages of the change.  The trial court stated that the magistrate was not required to consider R.C. 3109.04(E)(1)(a)(iii) in this case based upon *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589.  The question of whether a trial court correctly interpreted and applied a statute is a question of law, and we review it de novo.  *State v. Willig*, 10th Dist. No. 09AP-925, 2010-Ohio-2560, ¶ 14.

{¶ 9}   R.C. 3109.04(E) governs post-decree modification of parental rights and responsibilities.  Under R.C. 3109.04(E)(1)(a), the trial court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds:

> [B]ased on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. *In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child* * * *.

(Emphasis added.) R.C. 3109.04(E)(1)(a).  *See also In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, paragraph one of the syllabus.

{¶ 10}  In addition to determining whether modification of a prior decree allocating parental rights is in the best interest of the child, one of the following must apply: (1) both parents under a shared parenting plan agree to a modification, (2) with consent of the parents, the child has become integrated into the family of the person seeking to become the residential parent, or (3) the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.  And the court on its own motion and at any time "may modify the terms of the plan for shared parenting

approved by the court and incorporated by it into the shared parenting decree" if the court determines that "the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree." R.C. 3109.04(E)(2)(b). But under this section the court "shall not make any modification to the plan under this division, unless the modification is in the best interest of the children." *Id.* The legislature, through R.C. 3109.04, concerning the allocation of parental rights and responsibilities for the care of children, or "shared parenting," seems to instruct that once allocation is established, whether by decree (declaring that shared parenting shall occur) or according to a plan (implementing the decree or order), changing it is presumed to be ill-advised unless it can be established foremost that the change will be in the best interest of the children.

{¶ 11} In *Fisher*, the Supreme Court of Ohio considered the meaning of "parental rights and responsibilities" as used in R.C. 3109.04. The Supreme Court determined that "parental rights and responsibilities reside in the party or parties who have the right to the ultimate legal and physical control of a child." *Fisher* at ¶ 22. When a trial "court designates a residential parent and legal custodian, the court is allocating parental rights and responsibilities" and must follow R.C. 3109.04(E)(1)(a). *Fisher* at ¶ 23.

{¶ 12} The *Fisher* court further explained the distinctions between modifying a shared parenting "plan" and a shared parenting "order" noting that the "designation of residential parent and legal custodian can be modified under R.C. 3109.04(E)(1)(a)," but modifying terms of a shared parenting plan is pursuant to R.C. 3109.04(E)(2)(b). *Fisher* at ¶ 27. A "plan" provides for the implementation of the court's shared parenting *order* and includes

> "provisions covering all factors that are relevant to the care of the children, including, but not limited to, provisions covering factors such as physical living arrangements, child support obligations, provision  for the children's medical and dental care, school placement, and the parent with which the children will be physically located during legal holidays, school holidays, and other days of special importance."

*Fisher* at ¶ 28, quoting R.C. 3109.04(G). Under *Fisher*, the designation of school placement parent is a term of and determined by a shared parenting "plan" and pursuant to R.C. 3109.04(E)(2). Thus it does not require a finding that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to

the children which would be a factor for consideration required pursuant to R.C. 3109.04(E)(1)(a) were a party to seek modification of a decree or order.

{¶ 13} Also, this Court considered the application of R.C. 3109.04(E)(1)(a) to the modification of the amount of parenting time between the parents to a shared parenting plan in *Ramsey v. Ramsey*, 10th Dist. No. 13AP-840, 2014-Ohio-1921. In *Ramsey*, we determined that the modification to the amount of parenting time divided between the parents was a modification to the terms of a shared parenting plan and required the trial court to do so pursuant to R.C. 3109.04(E)(2), not 3109.04(E)(1)(a). Based on the authority of *Fisher* and *Ramsey*, the trial court did not err in finding that the magistrate was not required to consider R.C. 3109.04(E)(1)(a)(iii) and the trial court did not err in refusing to do so. *See Fisher; Ramsey*. Accordingly, we overrule Myers's second assignment of error.

## B. First Assignment of Error

{¶ 14} In his first assignment of error, Myers argues that the trial court's decision resulted from an abuse of discretion and was against the manifest weight of the evidence when it continued to designate Wade as school placement parent after her relocation to Arizona. Myers's basis for argument is that the trial court's decision is not in the best interest of the minor children.

{¶ 15} A trial court must follow R.C. 3109.04 when deciding child custody matters but it has broad discretion when determining what is the appropriate allocation of parental rights and responsibilities. *Parker v. Parker*, 10th Dist. No. 05AP-1171, 2006-Ohio-4110, ¶ 23. An appellate court must accord a trial court's determinations regarding parental rights and responsibilities the " 'utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.' " *Pater v. Pater*, 63 Ohio St.3d 393, 396 (1992), quoting *Miller v.* Miller, 37 Ohio St.3d 71, 74 (1988). Therefore, an appellate court will only reverse a trial court's custody determination if the trial court abused its discretion. *Miller* at 74; *Parker* at ¶ 23. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} When determining the best interest of the child, a trial court must consider multiple factors, including factors enumerated in R.C. 3109.04(F):

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to

believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(a) through (j).

{¶ 17} The magistrate examined the factors set forth in R.C. 3109.04(F). In his supplemental objections, Myers argued that the magistrate's findings of fact were not based on facts in evidence. The trial court compared the factual issues Myers raised to the evidence in the transcript. It determined that the magistrate's conclusions of fact that Myers alleged to be inapposite to the evidence were subject to interpretation by the trier of fact. The trial court found that the magistrate's findings of fact were not so divergent from the transcript as to make the magistrate's findings of fact invalid. The trial court determined that the magistrate properly applied the best interest factors in R.C. 3109.04(F)(1), (F)(2), and (F)(3) to his factual findings and that his decision was not against the manifest weight of the evidence. The decision of a domestic relations court's parental rights allocation findings is subject to review for abuse of discretion, which we have already discussed. Here, Myers argues in addition that the trial court's decision on reallocation was against the manifest weight of the evidence, or not supported by some competent, credible evidence going to all the essential elements of the case. " '[J]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus." *Butland v. Butland*, 10th Dist. No. 95APF09-1151, 1996 Ohio App. LEXIS 2773, *21 (June 27, 1996).

{¶ 18} Myers argues that the best interest factors in R.C. 3109.04(F) favor him as the school placement parent. Both parents requested the designation as school placement parent, almost all of the parties' families live in central Ohio and the children had adjusted to Myers's house at the time of trial. Wade's physical health is the impetus of her move to

Arizona. The parties disagreed as to the parenting time and exchanges of the children with Myers testifying Wade interfered with his parenting time and Wade testifying that Myers was often late and forfeited his parenting time.

{¶ 19} Myers argues that Wade cannot provide for the children in Arizona. Her family is here is central Ohio. She is unable to work due to her health issues. She receives long-term disability of $1,480 per month, but the rent on her apartment is $935.13 per month. (Tr. Vol. I at 89, 93.) The children had not visited her in Arizona but the guardian ad litem testified that all three children consistently expressed a desire to move to Arizona and live with Wade there. (Tr. Vol. II at 317.)

{¶ 20} The trial court reviewed the parties' plans for shared parenting, the transcript, the evidence and the pleadings, and it arrived at the same conclusion as the magistrate, finding it to be in the minor children's best interest to maintain the current plan for shared parenting with Wade as residential parent for school placement purposes.

{¶ 21} Wade has been the primary caretaker of the children for their entire lives. Wade reported a significant improvement in her health in Arizona. Wade found a church affiliated with the family's current church and investigated the schools. The magistrate believed Wade's testimony that Myers has not been cooperative in maintaining contact with her and did not timely respond to her requests to Skype. The magistrate also found that Myers's lack of cooperation regarding parenting time has made shared parenting a difficult and stressful venture. Therefore, the magistrate found Wade was more likely to honor the court-ordered terms of parenting time than Myers.

{¶ 22} Myers also argues that the guardian ad litem failed to perform her duties in accordance with the Rules of Superintendence for the Courts of Ohio, specifically, Sup.R. 48(D)(13).[1] Alleged violations of the Rules of Superintendence are not a basis for reversal.

---

[1] Ohio Rules of Superintendence of the Courts of Ohio, Rule 48(D)(13) requires:

> A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:
>
> (a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is present;

> The "Rules of Superintendence are designed (1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts." *State v. Singer* (1977), 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216. "They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants." *State v. Gettys* (1976), 49 Ohio App.2d 241, 243, 360 N.E.2d 735. *Accord State v. Navedo*, 11th Dist. No. 2007-L-094, 2008-Ohio-2324, at ¶ 18, citing *State v. Kowalski*, 11th Dist. No. 93-P-0057, 1995 Ohio App. LEXIS 1089, at *16-*17.

*Allen v. Allen*, 11th Dist. No. 2009-T-0070, 2010-Ohio-475, ¶ 31.

{¶ 23} The trial court as the factfinder may choose to believe or disbelieve any witness, and "the court is free to accept or reject, in whole or in part, the testimony or opinions of any witness, whether accepted as an expert or not and determine the weight

---

**(b)** Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;

**(c)** Ascertain the wishes of the child;

**(d)** Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case;

**(e)** Review pleadings and other relevant court documents in the case in which the guardian ad litem is appointed;

**(f)** Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;

**(g)** Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;

**(h)** Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court; and

**(i)** Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

and credibility to be given thereto." *Jackson v. Jackson*, 5th Dist. No. 03-CA-17, 2004-Ohio-816, ¶ 21, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus ("[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts.").

{¶ 24} Most of Myers's argument centers around his disagreement with the trial court's determination on parental rights allocation supported by the trial court's believing both Wade's and the guardian ad litem's testimony. The trial court reviewed the evidence, the pleadings, and the best interest factors and determined that it is in the minor children's best interest that Wade remain designated the residential parent for school placement purposes under the parties' shared parenting plan. We find no abuse of discretion in that determination. Nor can we find that the trial court's determination is against the manifest weight of the evidence.

{¶ 25} Accordingly, Myers's first and second assignments of error are overruled and the judgment of the trial court is affirmed.

## IV. CONCLUSION

{¶ 26} For the foregoing reasons, Myers's two assignments of error are overruled and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

KLATT and HORTON, JJ., concur.

_____