[Cite as *Bruns v. Green*, 2019-Ohio-2296.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


Kayleigh Bruns,                              :

      Plaintiff-Appellee,            :

                                     No. 18AP-259

v.                                           :         (C.P.C. No. 13JU-8624)

Marcus Green,                                :           (REGULAR CALENDAR)

      Defendant-Appellant.          :


D E C I S I O N

Rendered on June 11, 2019


**On brief:** *Plymale & Dingus, LLC*, and *M. Shawn Dingus*, for appellee. **Argued:** *M. Shawn Dingus.*

**On brief:** *Randy S. Kurek*, for appellant. **Argued:** *Randy S. Kurek.*


APPEAL from the Franklin County Court of Common Pleas,
Domestic Relations, Juvenile Branch

SADLER, J.

{¶ 1} Defendant-appellant, Marcus Green, appeals the March 2, 2018 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which terminated a prior shared parenting decree and plan and allocated the parental rights and responsibilities of appellant and plaintiff-appellee, Kayleigh Bruns. For the following reasons, we affirm the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant and appellee are the biological parents of one minor child born in 2012. On October 10, 2014, the parties entered into an Agreed Shared Parenting Plan ("the Plan") pursuant to R.C. 3109.04, in which both parties were "designated as the residential

parents and legal custodians," appellant was designated as the "school placement parent" so long as he resided in the Westerville School District, and both parents would exercise equal parenting time. (Agreed Shared Parenting Plan at 2.) The trial court approved the Plan and incorporated it into a shared parenting decree.

{¶ 3} On June 3, 2015, appellant filed a motion for change of parental rights and responsibilities requesting full custody of the child. Thereafter, appellee filed a "Motion to Terminate Shared Parenting and to Reallocate Parental Rights and Responsibilities" on August 27, 2015, in which appellee requested the trial court order termination of the Plan pursuant to R.C. 3109.04(E)(2)(c) or, in the alternative, a modification of the Plan. Appellant likewise filed a motion to terminate shared parenting plan on September 21, 2015, in which appellant requested the trial court terminate the Plan or, in the alternative, modify the plan. Each party sought sole legal custody of the child along with an order for the other party to pay child support. The guardian ad litem for the minor child filed a report on November 14, 2016 and a supplemental report on April 3, 2017. A hearing on the matter was held on April 11 and 12, July 13 and 14, September 12 and 13, and November 2, 2017, where both parties were present during the hearing and represented by counsel.

{¶ 4} On March 2, 2018, the trial court entered judgment that decreed the "parties' *Joint Shared Parenting Plan terminated*," designating appellee as the sole legal custodian and residential parent of the minor child stating a parenting schedule for the minor child both prior to and after the commencement of kindergarten. (Emphasis sic.) (Trial Ct. Jgmt. at 11.) The trial court modified the current order of child support from $0 to $322.26 to $376.95, depending on whether private health insurance is in effect. In doing so, the trial court considered the "best interest of a child" factors listed in R.C. 3109.04(F)(1) and (2) and parenting time factors listed in R.C. 3109.051(D).

{¶ 5} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 6} Appellant assigns the following as trial court error:[1]

> [1.] The trial court committed reversable [sic] error in changing the minor child's residential parent without any determination of a substantial change in circumstances and that either (i) both parties agreed to the change; (ii) both

[1] The parties voluntarily dismissed a third assignment of error pursuant to App.R. 28.

parties have consented to the integration of the minor child into Appellee's family; or (iii) that the harm likely to be caused to the minor child by the change of environment is outweighed by the advantages of the change of environment, as is mandated by ORC 3109.04(E)(1)(a).

[2.] The trial court committed reversable [sic] error in basing it's [sic] child support calculations on Appellant's prior employment without any determination that Appellant was underemployed or that income should be imputed to Appellant as mandated by R.C. 3119.01(C)(11).

## III.  LEGAL ANALYSIS

### A.  Appellant's First Assignment of Error

{¶ 7}   In his first assignment of error, appellant contends the trial court committed reversible error in changing the residential parent of the child without making the determinations required by R.C. 3109.04(E)(1)(a).  For the following reasons, we disagree.

{¶ 8}   The core dispute in this case is whether the trial court may terminate a shared parenting plan and decree and subsequently modify the parental rights and responsibilities under R.C. 3109.04(E)(2) without first finding a change in circumstances under R.C. 3109.04(E)(1)(a).  Although a trial court has broad discretion in deciding a custody matter, it "must follow R.C. 3109.04." *Myers v. Wade*, 10th Dist. No. 16AP-667, 2017-Ohio-8833, ¶ 15.  "The question of whether a trial court correctly interpreted and applied a statute is a question of law, and we review it de novo.  *Id.* at ¶ 8, citing *State v. Willig*, 10th Dist. No. 09AP-925, 2010-Ohio-2560, ¶ 14.

{¶ 9}   R.C. 3109.04 empowers the trial court to allocate the parental rights and responsibilities for the care of a minor child.  R.C. 3109.04(A).  Pertinent to this appeal, either or both parents of a minor child may file a pleading or motion requesting the court grant both parents shared parental rights and responsibilities for the care of the child and file a plan for the shared parenting of the child.  R.C. 3109.04(G).  If the parents jointly request shared parental rights and jointly file the plan, the trial court must approve the plan if it is in the best interest of the child.  R.C. 3109.04(D)(1)(a)(i).  Relevant factors pertaining to the best interest of the child determination and shared parenting are stated in R.C. 3109.04(F).  If an R.C. 3109.04(G) motion and plan are approved by the trial court, the trial court may allocate the parental rights and responsibilities for the care of the child to both parents and issue a shared parenting order requiring the parents to share all or some of the

aspects of the physical and legal care of the child in accordance with the approved plan for shared parenting.  R.C. 3109.04(A)(2).

{¶ 10} On the other hand, if neither parent files a pleading or motion in accordance with R.C. 3109.04(G) or if a submitted shared parenting plan is not in the best interest of the child:

> [T]he court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children.

R.C. 3109.04(A)(1).  *See Curry v. Curry*, 10th Dist. No. 10AP-437, 2010-Ohio-6536, ¶ 16.

{¶ 11} R.C. 3109.04(E) specifies the manner in which parents and the trial court may "modify" the shared parenting decree and plan or, in the alternative, "terminate" the shared parenting decree and plan. R.C. 3109.04(E)(1) and (2). In relevant part, R.C. 3109.04(E) states:

> (1)(a)  The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i)  The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>
> (ii)  The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

* * *

(2) In addition to a modification authorized under division (E)(1) of this section:

(a) Both parents * * * may modify the terms of the plan [subject to the court's review of the best interest of the child].

(b) The court may modify the terms of the plan * * * upon its own motion at any time if the court determines that the modifications are in the best interest of the child * * *.

(c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. * * * If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children.

(d) Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.

{¶ 12} Appellant argues the trial court erred in terminating the shared parenting plan and not retaining him as the residential parent without finding a change in circumstances pursuant to R.C. 3109.04(E)(1)(a). Appellant cites to *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, for the proposition that R.C. 3109.04(E)(1)(a) precludes a trial court from modifying a prior decree allocating parental rights and responsibilities unless it finds a change has occurred since the prior decree and a modification is in the best interest of the child and to highlight the policy considerations of R.C. 3109.04(E)(1)(a) to promote stability for children. Citing to *In re B.H.H.*, 12th Dist. No. CA2016-10-069, 2017-Ohio-8359, and *N.S. v. C.E.*, 6th Dist. No. H-17-006, 2017-Ohio-8613, appellant additionally

contends "[a] juvenile court must * * * apply R.C. 3109.04(E)(1)(a) in any motion to modify or terminate a shared parenting agreement between unwed parents in a juvenile court private custody action." (Appellant's Brief at 15.) Furthermore, for the first time in his reply brief, appellant contends both the syllabus in *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 1, and our holding in *Myers*, 2017-Ohio-8833, to be dispositive to this appeal and cites to three additional Fifth District Court of Appeals cases,[2] the dissent of a Seventh District Court of Appeals case,[3] and our case *Ramsey v. Ramsey*, 10th Dist. No. 13AP-840, 2014-Ohio-1921, in support of a requirement to show a change in circumstances in order to designate a different residential parent and legal custodian.

{¶ 13} Appellee counters the trial court properly terminated the decree and plan under R.C. 3109.04(E)(2)(c). Doing so, according to appellee, obligated the trial court to modify the decree under R.C. 3109.04(E)(2)(d), a provision which allows for allocation of parental rights and responsibilities without regard to the prior shared parenting decree. Appellee contends this court ruled on this very issue in *Lopez v. Lopez*, 10th Dist. No. 04AP-508, 2005-Ohio-1155, and found that where the trial court terminates a shared parenting plan, R.C. 3109.04(E)(2)(c), rather than R.C. 3109.04(E)(1)(a), controls. In oral argument, appellee pointed out the lack of opportunity to fully respond to appellant's newly raised arguments in the reply but believed *Fisher* would not displace *Lopez* as precedent since *Fisher*'s analysis was based on the premise that a modification of the prior shared parenting decree occurred, and the majority opinion there did not explicitly address terminations of the decree under R.C. 3109.04(E)(2)(c).

{¶ 14} After careful consideration, we agree with appellee. In *Lopez*, the mother argued the trial court failed to comply with the requirements of R.C. 3109.04(E)(1)(a) prior to reallocating parental rights. Because the trial court terminated the prior shared parenting decree, this court held R.C. 3109.04(E)(2)(c), not R.C. 3109.04(E)(1)(a), was the relevant statutory provision for purposes of appellate review. In doing so, we considered the positions of other appellate courts and agreed with the reasoning of the Seventh District in finding, "based upon the plain statutory language of R.C. 3109.04(E), the provisions for modification and termination of parental rights and responsibilities should be viewed as

---

[2] *Jagodzinski v. Abdul-Khaliq*, 5th Dist. No. 15-CA-31, 2015-Ohio-5510; *Hrabovsky v. Axley*, 5th Dist. No. 2013CA00156, 2014-Ohio-1168; *Wright v. Wright*, 5th Dist. No. 2011CA00129, 2012-Ohio-1560.
[3] *Kougher v. Kougher*, 194 Ohio App.3d 703, 2011-Ohio-3411, ¶ 23 (7th Dist.).

existing independently." *Lopez* at ¶ 25, citing *Dobran v. Dobran*, 7th Dist. No. 97 CA 166 (Sept. 1, 1999) ("R.C. 3109.04(E)(1)(a) only addresses those occasions when a modification is sought in the existing shared parenting plan."). Consequently, we find *Lopez* directly on point with this case.

{¶ 15} The reasoning of *Lopez* is consistent with the plain language of the statute. R.C. 3109.04(E)(2) specifically allows termination "[*i*]*n addition to* a modification authorized under division (E)(1)" and, on termination, R.C. 3109.04(E)(2) requires the trial court to issue a modified decree in accordance with R.C. 3109.04(A)(1) through (3) without mention of R.C. 3109.04(E)(1). (Emphasis added.) As applicable here, under R.C. 3109.04(A)(1), if a submitted shared parenting plan is not in the best interest of the child, which is uncontested here, the trial court is obligated to "allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child," and divide the other rights and responsibilities for the care of the children between the parents. R.C. 3109.04(A)(1). *See, e.g., Curry*, 2010-Ohio-6536, ¶ 16, 19 (evaluating, after *Lopez* and *Fisher*, a trial court's termination of a shared parenting decree and reallocation of the parties' parental rights and responsibilities, including custody, under R.C. 3109.04(E)(2) and (A)(1) without regard to R.C. 3109.04(E)(1)(a)); *Redmond v. Wade*, 4th Dist. No. 16CA16, 2017-Ohio-2877, ¶ 59 (finding, in a termination case, the trial court did not abuse its discretion under R.C. 3109.04(E)(2)(c) "when it evaluated the R.C. 3109.04(F)(1) best interest factors and designated appellee the child's residential parent"); *Sayre v. Furgeson*, 3d Dist. No. 17-15-16, 2016-Ohio-3500, ¶ 21 ("[T]wo-step standard of R.C. 3109.04(E)(1)(a) must be used in all situations except * * * terminating a shared parenting decree that includes a shared parenting plan.") (emphasis omitted). Whether this statutory scheme implicates policy concerns is a matter for the legislature, not the judiciary. *Athens v. Testa*, 10th Dist. No. 18AP-144, 2019-Ohio-277, ¶ 65 ("The judiciary * * * does not appraise legislative choices.").

{¶ 16} Moreover, appellant has not met his burden of demonstrating error on appeal. *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); App.R. 16(A)(7). First, as a preliminary matter, we note that appellant asks us to evaluate whether

the trial court erred by failing to "retain" himself as the "residential parent designated by the prior shared parenting decree." (Appellant's Brief at 4.) However, appellant's reference to himself as the residential parent is against the record: the shared parenting plan designated both parties "residential parents and legal custodians," and appellant was designated as the "school placement parent" so long as he resided in the Westerville School District. (Agreed Shared Parenting Plan at 2.)

{¶ 17} Second, the cases referenced in appellant's principal brief, *In re James*, *In re B.H.H.*, and *N.S. v. C.E.*, concern modifications of the shared parenting plan rather than terminations and are therefore not determinative of this case. In fact, *In re B.H.H.* cuts against appellant's argument, stating "[i]n contrast to the modification of a prior decree allocating parental rights and responsibilities under R.C. 3109.04(E)(1)(a)," the termination of a shared parenting plan under R.C. 3109.04(E)(2)(c) does not require a showing of a change in circumstances. *Id.*, 2017-Ohio-8359, at ¶ 13.

{¶ 18} Third, "[a]ppellate courts generally will not consider a new issue presented for the first time in a reply brief." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18. Doing so "effectively den[ies] the appellee an opportunity to respond to it." (Internal quotations omitted.) *Mitchell v. Holzer Med. Ctr.*, 4th Dist. No. 16CA20, 2017-Ohio-8244, ¶ 22. In the case at bar, appellant did not raise in his initial appellate brief the argument that *Fisher* applies to terminations in addition to modifications. Rather, he raised it for the first time in his reply brief. By failing to raise it in his initial brief, appellant deprived appellee of the opportunity to fully respond to the issue.

{¶ 19} Nevertheless, even had this argument been properly raised, we do not believe *Fisher* or the additional cases cited by appellant control the outcome of this case. Unlike in the instant case, *Fisher* involved some controversy as to whether the actions of the trial court constituted a modification or a termination. The trial court considered its own actions to be a termination, but the appellate court treated the trial court's action as a modification and found its opinion to be in conflict with another appellate court on that specific basis. The Supreme Court of Ohio likewise accepted the appeal and certified a conflict among the two districts on the question of "the proper application of R.C. 3109.04(E)(1)(a) and R.C. 3109.04(E)(2)(b) with respect to the modification of the designation of residential parent and legal custodian of a child." *Id.*, 2007-Ohio-5589, at ¶ 10. It is this question the majority

opinion expressly answered; the majority opinion makes no mention of R.C. 3109.04(E)(2)(c) beyond noting that section permits the termination of a shared parenting plan if the court finds that shared parenting is not in the best interest of the child. While the dissent disagreed as to the majority opinion's characterization of the trial court's actions and believed sections on termination to control, we cannot say the holding of *Fisher* specifically addresses whether R.C. 3109.04(E)(1)(a) must be considered under R.C. 3109.04(E)(2)(c) terminations. Therefore, we do not believe *Fisher* precludes following *Lopez* as precedent here.

{¶ 20} In this case, neither party disputes that the trial court terminated the shared parenting decree and plan, a result both parties sought. This case firmly involves a termination under R.C. 3109.04(E)(2), a section which clearly permits the trial court to allocate parental rights as if no shared parenting plan existed. *Curry*, 2010-Ohio-6536, at ¶ 16. Considering all the above and following *Lopez*, we find appellant has not demonstrated the trial court erred in ultimately designating appellee as legal custodian and residential guardian without making the determinations in R.C. 3109.04(E)(1)(a).

{¶ 21} Accordingly, appellant's first assignment of error is overruled.

**B. Appellant's Second Assignment of Error**

{¶ 22} In his second assignment of error, appellant argues the trial court committed reversible error in basing its child support calculations on his prior employment without any determination that he was underemployed or that income should be imputed to him "as mandated by R.C. 3119.01(C)(11)."[4] (Appellant's Brief at 3.)

{¶ 23} R.C. 3119.01 provides definitions for calculation of child support obligations. At the time the trial court judgment was issued, R.C. 3119.01(C) stated in pertinent part:

> (5) "Income" means either of the following:
>
> (a) For a parent who is employed to full capacity, the gross income of the parent;
>
> (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.
>
> * * *

---

[4] R.C. 3119.01 was recently amended, effective March 28, 2019. Former R.C. 3119.01(C)(11) is now renumbered as R.C. 3119.01(C)(17); the substance of the section did not change.

(7)(a) "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income.

* * *

(11) "Potential income" means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:

(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x)   The parent's decreased earning capacity because of a felony conviction;

(xi)  Any other relevant factor.

"The parent's subjective motivations for being *voluntarily* unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation."  (Emphasis sic.)  *Rock v. Cabral*, 67 Ohio St.3d 108, 111 (1993).

{¶ 24}  A trial court's determination that a parent is voluntarily underemployed for purposes of calculating child support under R.C. 3119.01 and assessment of imputed income the parent would have earned if fully employed is reviewed for an abuse of discretion.  *Id.*; *Dach v. Homewood*, 10th Dist. No. 14AP-502, 2015-Ohio-4191, ¶ 59; *Misra v. Mishra*, 10th Dist. No. 17AP-306, 2018-Ohio-5139, ¶ 25.  A question of law is reviewed de novo.  *Dach* at ¶ 11 ("When an appellate court considers a trial court's interpretation and application of a statute, the de novo standard of review applies.").

{¶ 25}  Appellant argues the trial court committed reversible error by finding he was "capable of earning $54,241.00 per year" without any other findings or consideration. (Trial Ct. Decision at 10.)  Specifically, appellant contends that under *Apps v. Apps*, 10th Dist. No. 02AP-1072, 2003-Ohio-7154, ¶ 48, and *Bruno v. Bruno*, 10th Dist. No. 04AP-1381, 2005-Ohio-3812, the trial court, in its decision to impute income to him, should have made a finding that he was "underemployed" and considered the factors set forth in R.C. 3119.01(C)(11).  (Appellant's Brief at 21.)  Appellant explains that $54,241 was based on the income he made in prior employment working at a juvenile detention center when, at the time of trial, he was earning much less because he was completing a master's degree in education and was working as a latchkey teacher in order to position himself for greater income earning potential in the future.  Appellant argues he should not be punished for sacrificing himself financially by obtaining a job which allowed him to fulfill his obligations to his child.

{¶ 26}  Appellee argues that under *Dach*, a trial court does not commit reversible error in failing to make an express finding that a parent is underemployed for purposes of imputing income when the reviewing court is capable of inferring such a finding from the record.  *Id.* at ¶ 57.  Appellee contends the record here has sufficient evidence to do so.

{¶ 27} "Pursuant to R.C 3119.01(C)(11)(a), when imputing income to a parent, the trial court must consider the enumerated factors."  *Misra* at ¶ 18, citing *Meeks v. Meeks*, 10th Dist. No. 05AP-315, 2006-Ohio-642, ¶ 37.  Regarding the trial court's duty to make an express finding, in *Dach*, this court addressed and distinguished *Bruno* and *Apps* in holding a trial court's failure to make an express finding of underemployment is not automatically reversible error.  Specifically, *Dach* states in pertinent part:

> This court has held that before a trial court may impute income to a parent, the court must make a finding that the parent is voluntarily unemployed or underemployed.  *Bruno v. Bruno*, 10th Dist, No. 04AP-1381, 2005-Ohio-3812, citing *Apps v. Apps*, 10th Dist. No. 02AP-1072, 2003-Ohio-7154, ¶ 48.  However, more recently, this court has distinguished those cases. In *Chawla v. Chawla*, 10th Dist. No. 13AP-399, 2014-Ohio-1188, finding that when the trial court considered the R.C. 3119.01(C)(11) factors, provided rationale for its imputed income and the record demonstrated evidence to support a finding of voluntary underemployment, this court found no abuse of discretion in calculating the child support obligation. *See also*, *Thaher v. Hamed*, 10th Dist. No. 09AP-970, 2010-Ohio-5257 (specific words "voluntarily under-employed" not required where it is clear the trial court concluded that, based on the evidence, the obligor was voluntarily underemployed); *Snyder v. Snyder*, 5th Dist. No. 2008CA00219, 2009-Ohio-5292 (no magic language requirement in deciding whether one is voluntarily underemployed or unemployed); *Winkelman v. Winkelman*, 11th Dist. No. 2008-G-2834, 2008-Ohio-6557 (no magic language required in making a finding of voluntary unemployment or underemployment and implicit in the trial court's decision was that the parent was voluntarily unemployed); *Drummer* [*v. Drummer*, 3d Dist. No. 12-11-10, 2012-Ohio-3064] (while the better practice would be to expressly find a parent unemployed or underemployed, it is not reversible error to fail to make an express finding for purposes of imputing income to the parent when the reviewing court is capable of inferring such a finding from the record). *See also O'Connor v. O'Connor*, 184 Ohio App.3d 538, 2009 Ohio 5436, 921 N.E.2d 700 (3d Dist.2009); *Wheeler v. Wheeler*, 6th Dist. No. OT-04-025, 2005-Ohio-1025, ¶ 26.

*Id.* at ¶ 57.

{¶ 28} In this case, the record contains evidence from which we can infer the trial court made the finding that appellant is voluntarily underemployed. The record shows that appellant held a bachelor's degree in sociology and criminal justice. He was employed as a correctional supervisor at a juvenile detention center from 2002 to the end of 2016. He also worked part-time with a city school district as an educational aide sometime in 2014 and 2015. Federal income tax documents and earnings statements in the record show that from 2012 to 2015, appellant earned between $40,000 to $55,000 each year. He did not submit financial documents for 2016. We note that, contrary to his argument, appellant did not testify that the reason he left his higher paying position was to pursue his Master's degree.[5] Rather, appellant testified that in January 2017, he left his position to become a part-time latch key teacher in order to spend more time with his child and increase the likelihood he would be offered a full-time teaching position with that city school district. The latchkey position paid $31.85 per hour. Appellant further testified that he was completing his Master's Degree within days of the July 2017 hearing, and would be able to work as a teacher in December of that year.

{¶ 29} Considering the above, the record contains evidence to support a finding of voluntary underemployment. Therefore, despite the trial court failing to make an express finding of voluntary underemployment, pursuant to *Dach*, we find appellant has not provided an evidentiary basis to demonstrate that the trial court committed reversible error or abused its discretion in imputing income to him based upon his prior employment.

{¶ 30} Accordingly, appellant's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 31} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

KLATT, P.J., and DORRIAN, J., concur.

_____

---

[5] Appellant provides no legal authority as to how pursuit of an advanced degree impacts the voluntary abandonment of employment determination. As previously noted, appellant's subjective reasons for voluntarily abandoning employment are irrelevant to whether potential income should be imputed to a parent. *Rock.*