**ANDREW P., Appellee,**

v.

**JESSY Z., Appellant.**

[Cite as *Andrew P. v. Jessy Z.*, 177 Ohio App.3d 837, 2008-Ohio-4124.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–07–029.

Decided Aug. 15, 2008.

Barry H. Wolinetz, for appellee.

Ann M. Baronas–Jonke, for appellant.

Skow, Judge.

{¶ 1} Jessy Z., appellant, appeals the decision of the Wood County Court of Common Pleas, Juvenile Division, which terminated a shared-parenting plan between Jessy and Andrew P., appellee, for their daughter, Katherina Z., and reallocated parental rights and responsibilities.

{¶ 2} Jessy and Andrew, unmarried, had Katherina in March 2002. A consent judgment entry filed on January 28, 2005, established a shared-parenting plan that provided for "equitable sharing of parental rights, responsibilities, and decision making" for Katherina. One year and two months later, Jessy filed a motion to terminate the shared-parenting agreement and sought an order naming her residential parent and legal custodian. By agreement of the parties, attorney Pamela Manning was appointed Katherina's guardian ad litem ("GAL"), and the matter was set for an expedited hearing. Jessy then filed a motion to dismiss her own motion, without prejudice. The parties filed a consent judgment entry agreeing to continue shared parenting and to continue Manning's appointment as GAL. The parties also agreed that both they and Katherina would undergo psychiatric evaluations.

{¶ 3} On March 16, 2006, Jessy filed a second motion to terminate the shared-parenting time and requested custody. Andrew responded by filing his own

motion to terminate the plan and requesting custody. Dr. Wayne Graves was appointed to perform psychological evaluations on Jessy, Andrew, and Katherina.

{¶ 4} At trial, Andrew withdrew his motion to terminate the shared-parenting plan and orally requested that the shared-parenting plan continue "in some form." After two days of testimony, including evidence of Dr. Graves's evaluations and the GAL's recommendations, the magistrate denied Jessy's motion to terminate the shared-parenting plan. The magistrate's decision granted each party parenting time for seven consecutive days with alternating weeks. The GAL and Jessy filed objections to the magistrate's findings of fact and reiterated their request that Jessy be named Katherina's residential parent.

{¶ 5} On April 5, 2007, the trial court issued a judgment entry with new factual findings, adopting the magistrate's decision in part and rejecting it in part. Supporting its conclusion, the trial court made the following specific findings in its judgment entry:

{¶ 6} 1. A Children's Resource Center prevention specialist who personally observed Jessy and Andrew with Katherina testified that each parent obviously loves Katherina and interacts appropriately with her.

{¶ 7} 2. Based on the evidence, "Katherina has adjusted well to her home and community. Both parents have been involved throughout Katherina's life. Katherina has further had opportunity such as attending ballet classes, basketball, soccer, gymnastics, and nature classes."

{¶ 8} 3. Andrew voluntarily works one day per week and has not worked full-time for approximately four years. Andrew relies "heavily upon his parents for payment of bills and support." Jessy works one full-time job and one part-time job. Jessy "is able to provide basic support for herself and Katherina."

{¶ 9} 4. Andrew took Katherina to hospital emergency rooms approximately "ten times over a four year span for a variety of reasons including constipation, diaper rash, and alleged abuse. In Katherina's short life, there have been four investigations of alleged physical abuse of Katherina. All of these investigations have been concluded as unsubstantiated."

{¶ 10} 5. "[W]hile there was no substantiated abuse, at the very least a number of injuries sustained by Katherina appear to demonstrate some lack of an appropriate level of supervision provided to Katherina" by Jessy.

{¶ 11} 6. Dr. Wayne Graves, a psychiatrist qualified as an expert, evaluated Jessy, Andrew, and Katherina.

{¶ 12} 7. With respect to Katherina, Dr. Graves "did express some concern over the emotional impact of Katherina repeatedly being taken to the emergency room" by Andrew.

{¶ 13} 8. With respect to Andrew, Dr. Graves found appellee "somewhat guarded and resistant during his evaluation to the extent he failed to answer certain questions which made a complete assessment * * * difficult." Andrew "also appears to emphasize concerns and physical issues with Katherina perhaps to an extreme."

{¶ 14} 9. Other evidence led the trial court to find that Andrew "works well with those he considers supporting his position and is reluctant or guarded to work with those he perceives to have positions contrary to his."

{¶ 15} 10. Evidence led the trial court to find that events occurred that "purportedly provide an insight into [Andrew's] mental health, thought processes or judgments," including:

{¶ 16} a. While proceedings were pending, Andrew established a website critical of the Wood County Department of Job and Family Services, believing that it did not properly investigate his allegations that Katherina was physically abused. Andrew placed pictures of Katherina on the website and banners of his criticism in his yard. Katherina saw one of the banners at least once. The trial court found that these actions "demonstrate poor judgment and at their worst, attempt to place Katherina's situation * * * in the public domain primarily for [Andrew's] purposes."

{¶ 17} b. Andrew kept Katherina's soiled diapers for "significant periods of time in an effort to demonstrate [that Jessy] failed to change diapers as needed."

{¶ 18} c. Andrew "took pictures of Katherina's bowel movements. [Andrew] claims these photos were taken as a result of Katherina's constipation issues and for medical purposes."

{¶ 19} 11. With respect to Jessy, Dr. Graves described her as "open, honest and as someone who avoided conflict." Jessy was also found to be "relatively independent."

{¶ 20} 12. Evidence led the trial court to find that events occurred that "purportedly provide an insight into [Jessy's] mental health, thought processes or judgments," including:

{¶ 21} a. A documented incident when Jessy left Katherina alone in a vehicle.

{¶ 22} b. Jessy allowed a "male companion to spend the night with [Jessy] in [Jessy's] bed—which is located in the same room where Katherina was sleeping—separated by a partial partition."

{¶ 23} c. "An incident observed in a YMCA parking lot wherein [Jessy] was observed yelling at Katherina and, per one witness, slapping Katherina."

{¶ 24} 13. A specific finding that "both [Jessy] and [Andrew] can generally honor and facilitate parenting time Orders."

{¶ 25} 14. Since Andrew believes that Jessy is responsible for alleged physical abuse, and since Jessy "is not desirous of shared parenting," the trial court found "nearly a complete breakdown of trust between the parties at this time."

{¶ 26} 15. Because testimony conflicted as to whether Andrew consulted with Jessy before changing Katherina's doctors, enrolled Katherina in counseling, and enrolled Katherina in activities, the court found that "the ability of the parents to cooperate and make decisions jointly is also seriously compromised" and "extremely limited."

{¶ 27} 16. The GAL and Dr. Graves recommended that the shared-parenting plan be terminated.

{¶ 28} 17. Given the context, "any concept of 'shared parenting' would be a shared parenting plan on paper only. * * * Any use of the word 'shared parenting' in this context is simply a charade."

{¶ 29} Based on those findings, the trial court concluded that a change in circumstances had occurred since the original shared-parenting plan was instituted, concluded that termination of the shared-parenting plan was in Katherina's best interests, and concluded that any harm caused by a new arrangement would be outweighed by the advantages.

{¶ 30} The trial court's order grants Jessy and Andrew each seven consecutive days of parenting time every other week, with weeks alternating. With respect to the allocation of parental rights, the order specifically states: "Plaintiff/Father and Defendant/Mother shall be named the residential parent and legal custodian of Katherina at all such times as Katherina is legally with them * * *." Both Jessy and Andrew were given authority to make medical decisions for Katherina "while Katherina is physically present with them." Visitation for holidays was ordered pursuant to the standard court schedule. The parties were ordered to refrain from scheduling activities in conflict with the other parent's time, without consent. However, they were ordered not to change Katherina's health-care providers and were required to give each other notice of all nonemergency medical appointments.

{¶ 31} From that order, Jessy appealed and now assigns the following as error for review:

{¶ 32} "The trial court abused its discretion in granting both parties residential parent status with a fifty-fifty time share and joint decision making responsibilities while terminating the shared parenting plan."

{¶ 33} Jessy argues that the court abused its discretion by contradicting its own findings and recommendations. Specifically, she argues that it was an

abuse of discretion to find shared parenting to be against Katherina's best interests and then to institute the equivalent. We agree.

{¶ 34} In determining the allocation of parental rights and responsibilities for the care of minor children, the trial court is vested with broad discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Absent an abuse of that discretion, a trial court's decision regarding these issues will be upheld. *Masters v. Masters* (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140; *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. "A finding of an error in law is a legitimate ground for reversal * * *." *Davis* at 419, 674 N.E.2d 1159.

{¶ 35} R.C. 2151.23(F)(1) provides that the juvenile court shall exercise its jurisdiction in child-custody matters in accordance with R.C. 3109.04, which authorizes domestic-relations courts to allocate parental rights and responsibilities for the care of minor children.

{¶ 36} In order to change the designation of the residential parent and legal custodian of a child, the court must determine that a change in circumstances has occurred and that the modification is in the child's best interests. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, syllabus, interpreting R.C. 3109.04(E)(1). However, a court may, without altering the designation of the residential parent and legal custody, "modify" the terms of a shared-parenting plan on a finding that a modification would be in the child's best interests. R.C. 3109.04(E)(2)(b); *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 27. Thus, a court may modify the terms of a shared-parenting plan without changing the residential parent and legal custodian pursuant to R.C. 3109.04(E)(2), but may only change the designation of the residential parent and legal custodian pursuant to R.C. 3109.04(E)(1).

{¶ 37} However, other provisions apply here. "Shared parenting" means "that the parents share, in the manner set forth in the plan for shared parenting that is approved by the court * * * all of some of the aspects of physical and legal care of their children." R.C. 3109.04(J). The trial court expressly found, granting Jessy's motion, that shared parenting was no longer in Katherina's best interest. Accordingly, it expressly and properly terminated the shared-parenting plan pursuant to R.C. 3109.04(E)(2)(c). That section provides: "The court may terminate a prior shared parenting decree that includes a shared parenting plan * * * upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children."

{¶ 38} Upon the granting of Jessy's motion, the trial court was then obliged to follow R.C. 3109.04(E)(2)(d), which provides: "Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court *shall proceed and issue a modified decree for the allocation of parental rights and responsibilities* for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." (Emphasis added.)

{¶ 39} Division (A) of R.C. 3109.04 gives a trial court two options for allocating parental rights and responsibilities. The second option, R.C. 3109.04(A)(2), allows a trial court to "allocate the parental rights and responsibilities for the care of the children *to both parents and issue a shared parenting order * * *.*" (Emphasis added.) However, this can only be done if shared parenting is in the child's best interest. The GAL and Dr. Graves recommended that shared parenting was not in Katherina's best interest, and the trial court expressly found against a shared-parenting plan. This section, therefore, cannot apply.

{¶ 40} Because Andrew had filed an oral motion requesting shared parenting, but the court found shared parenting to be against Katherina's interests, the only other option for the trial court lay in R.C. 3109.04(A)(1), which provides:

{¶ 41} "[I]f at least one parent files both a pleading or motion and a shared parenting plan under that division but no plan for shared parenting is in the best interest of the children, the court, in a manner consistent with the best interest of the children, *shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child,* and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children." (Emphasis added.)

{¶ 42} The conclusion that shared parenting was against Katherina's interest was, given the evidence, proper. However, the trial court clearly abused its discretion and applied the incorrect statutory sections when naming both Jessy and Andrew as the residential parent and legal custodian. Based upon the parties' motions and the trial court's own conclusion that shared parenting was unsuitable, and pursuant to the framework of R.C. 3109.04, the only option was to follow the requirements of R.C. 3109.04(A). The plain language of that section forbids the trial court from naming both parents as the residential parent and legal custodian. R.C. 3109.04(A) allows only one parent to be named the residential parent and legal custodian when a shared-parenting plan cannot and should not be adopted. One parent must have primary rights and responsibili-

ties, and only one parent can be designated legal custodian. This must be done considering the "best interest" factors criteria of R.C. 3109.04(F)(1). As evidenced by the word "shall" in division (A)(1), the court, based on its own conclusions, had no discretion to do otherwise.

{¶ 43} Appellant's assignment of error is well taken. The judgment of the Wood County Court of Common Pleas, Juvenile Division, is reversed, and this matter is remanded for further proceedings consistent with this decision and judgment and the applicable law. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.

Judgment reversed<br>and cause remanded.

HANDWORK and OSOWIK, JJ., concur.