[Cite as *In re A.C.*, 2019-Ohio-2891.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.C. | : | APPEAL NO. C-180088 |
| | | TRIAL NO. F11-2183 |
| | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  July 17, 2019

*Charles H. Bartlett, Jr.,* for Appellant-Father,

*Kya Cannon*, pro se Appellee-Mother.

**Zayas, Judge.**

{¶1}   Appellant father appeals the January 19, 2018 judgment of the Hamilton County Juvenile Court.  The juvenile court overruled father's objections to the July 12, 2017 magistrate's decision, which designated appellee mother the residential parent and legal custodian of the parties' minor child, A.C.  For the reasons that follow, we affirm the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

### I. Background and Procedural History

{¶2}   Mother and father are the biological parents of one minor child, A.C., born on March 24, 2011. On September 16, 2011, father filed a petition for legal custody of A.C. The petition was dismissed on May 30, 2012, because father did not appear in court to move the petition forward.  On July 12, 2012, father again filed for legal custody.  On April 19, 2013, shared parenting was granted by agreement of father and mother, pursuant to R.C. 3109.04.  Both parents were designated residential parents and legal custodians, were required to agree on school placement of A.C. prior to enrollment, and would exercise equal parenting time.

{¶3}   On July 22, 2014, father filed a motion to terminate shared parenting, requesting full legal custody of A.C.  On August 5, 2015, father and mother agreed to a revised shared-parenting plan, which the trial court approved and incorporated into an agreed entry.  On January 11, 2016, mother filed a motion to terminate shared parenting, requesting full legal custody of A.C with modified parenting time for father.  Mother also filed a contempt motion against father.  On March 3, 2017, while mother's motion was still pending, father filed a contempt motion against mother.

{¶4} A hearing on all pending motions was held on March 30 and June 5, 2017. Both father and mother testified, and presented their own witnesses. Both father and mother admitted that their communication is poor and they can only communicate through Our Family Wizard, a website to help parents manage child-custody schedules.

{¶5} Mother testified that father was late getting A.C. to school on several occasions. Mother submitted A.C.'s 2015-2016 report card, which showed that A.C. had five tardy arrivals in the first quarter, one in the second and third quarters, and three in the fourth quarter. Father testified that he was late getting A.C. to school on three occasions. He explained that when he dropped A.C. off at school, mother would be at the school dropping off her other child and would talk to A.C., making her late.

{¶6} Mother testified that father put A.C. into two different after-school care programs without telling mother in advance, and that A.C., who was five years old at the time, had to take a bus to one of the facilities. Father testified that he did not know why A.C. was in one of the after-school care programs—the program run by the Salvation Army—but he did not think that he enrolled her. Father's testimony on this issue differed from his answer in mother's request for admission, wherein he stated that mother had been informed about the Salvation Army program by father and through the school.

{¶7} Mother testified to issues with child exchanges. On October 26, 2015, mother had arranged for A.C.'s grandmother to pick up A.C. from father, but father refused to turn A.C. over to her. Mother claimed that there were times when father could not pick up A.C. from preschool and mother had to make arrangements to get her. Father testified that there were eight to ten times where mother had failed to exchange A.C. when it was his parenting time. Father claimed that mother was late to exchanges about once

per week. Father also claimed that one time mother did not pick up A.C. from her daycare and A.C. was there until 10:30 p.m.

{¶8} Father testified to A.C.'s behavioral problems at school. At a parent/teacher conference regarding A.C.'s behavior, the school staff recommended that A.C. see a counselor. The revised shared-parenting plan required mother and father to make decisions on healthcare, including counseling, together. Father testified that he told mother he was taking A.C. to counseling, but mother refuted this claim. Father took A.C. to the counselor recommended by the school for about a year. She attended counseling at least once a week, but sometimes up to three times per week. Father said he saw improvements in A.C.'s behavior. When A.C. stopped attending counseling, her behavior worsened, and the school again recommended that A.C. see a counselor. Mother took A.C. to a separate counselor for treatment. Mother admitted that she did not tell father about the separate counseling.

{¶9} Father testified that mother refused to give him A.C.'s medical insurance cards. The revised shared-parenting plan required mother to provide father with a copy of the health and dental insurance cards. Father admitted that all of the health insurance information was posted on Our Family Wizard. When questioned, father did not know the name of A.C.'s doctor or dentist. Father insisted that mother hid this information from him.

{¶10} Following the two separate days of hearings, the magistrate issued a decision that set forth various findings of fact and conclusions of law. The magistrate determined, pursuant to R.C. 3109.04(F)(2), that it was in A.C.'s best interest to terminate shared parenting; and, pursuant to R.C. 3109.04(F)(1), that it was in A.C.'s best interest for mother to be designated her residential parent and legal custodian. The magistrate

dismissed mother's and father's motions for contempt, finding that both parents violated the court-ordered revised shared-parenting plan. The magistrate also entered a schedule for father's parenting time.

{¶11} Father filed objections to the magistrate's decision and moved to set aside the order, claiming it was against the manifest weight of the evidence and contrary to law. Following a hearing, the trial court overruled father's objections and adopted the magistrate's decision as the judgment of the court. Father now appeals, raising two assignments of error.

## II. Legal Analysis

### Standard of Review

{¶12} Decisions concerning child-custody matters rest within the sound discretion of the trial court. *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). The judge, acting as the trier of fact, is in the best position to observe the witnesses, weigh evidence and evaluate testimony. *In re Brown*, 98 Ohio App.3d 337, 648 N.E.2d 576 (3d Dist.1994). Therefore, we must not substitute our judgment for that of the trial court absent an abuse of discretion. *Miller* at 74; *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We will not reverse a trial court's judgment that is supported by competent, credible evidence. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990).

### Terminating Shared Parenting

{¶13} In his first assignment of error, father argues that the trial court erred in two respects in adopting the magistrate's decision to grant mother's motion to terminate the revised shared-parenting plan. First, father contends that where parents enter into a court-approved shared-parenting plan, a subsequent motion to

terminate the shared-parenting plan can only be granted upon a showing of a change in circumstances pursuant to R.C. 3109.04(E)(1)(a).[1]  Second, father argues that while he and mother sometimes disagreed as to what was best for A.C., it was an abuse of discretion for the trial court to use that disagreement as a basis to terminate shared parenting.

{¶14} R.C. 3109.04 governs the allocation of parental rights and responsibilities for the care of children and shared-parenting plans.  R.C. 3109.04(E)(2) specifies the manner in which parents and the trial court may *terminate* a shared-parenting decree and plan.  R.C. 3109.04(E)(2)(c) and (d).  In relevant part, R.C. 3109.04(E)(2) states:

> In addition to a modification authorized under division (E)(1) of this section:
>
> * * *
>
> (c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division

---

[1] Father abandoned this contention at oral argument, acknowledging that termination of the revised shared-parenting plan did not in fact require a change in circumstances of the child pursuant to R.C. 3109.04(E)(2)(c).  However, in accordance with the appellate rules and practice of forbidding new arguments at oral argument, we will proceed with our review of the assignments of error asserted in father's brief.  *See* App.R. 12(A) and 21(I); *Hamilton v. Ohio Dept. of Health*, 2015-Ohio-4041, 42 N.E.3d 1261, ¶ 16, fn. 3 (10th Dist.), citing *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025, ¶ 20 (1st Dist.).  Moreover, father did not withdraw this assignment of error, and under App.R. 12(A)(1)(c), "[o]n an undismissed appeal from a trial court, a court of appeals shall * * * [u]nless an assignment of error is made moot by a ruling on another assignment of error, decide each assignment of error and give reasons in writing for its decision."

(D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children.

(d) Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.

{¶15} R.C. 3109.04(E)(1) specifies the manner in which parents and the trial court may *modify* a shared-parenting decree and plan. In relevant part, R.C. 3109.04(E)(1) states:

(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the

7

modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

(b) One or both of the parents under a prior decree allocating parental rights and responsibilities for the care of children that is not a shared parenting decree may file a motion requesting that the prior decree be modified to give both parents shared rights and responsibilities for the care of the children. The motion shall include both a request for modification of the prior decree and a request for a shared parenting order that complies with division (G) of this section. Upon the filing of the motion, if the court determines that a modification of the prior decree is authorized under division (E)(1)(a) of this section, the court

may modify the prior decree to grant a shared parenting order, provided that the court shall not modify the prior decree to grant a shared parenting order unless the court complies with divisions (A) and (D)(1) of this section and, in accordance with those divisions, approves the submitted shared parenting plan and determines that shared parenting would be in the best interest of the children.

{¶16} This court has not yet specifically ruled on whether R.C. 3109.04(E)(2)(c), rather than R.C. 3109.04(E)(1)(a), controls where the trial court terminates a shared-parenting plan. Recently, the Tenth District Court of Appeals addressed this very question of statutory interpretation. *Bruns v. Green*, 10th Dist. Franklin No. 18AP-259, 2019-Ohio-2296, ¶ 12. There, the appellant cited the syllabus in *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546 (2007), two Tenth District Court of Appeals cases, three additional Fifth District Court of Appeals cases, as well as the dissent in a Seventh District Court of Appeals case, in support of the proposition that R.C. 3109.04(E)(2)(c) requires a showing of a change in circumstances in order to designate a different residential parent and legal custodian. Relying on earlier precedent, the Tenth District found that it had already held that "[b]ecause the trial court terminated the prior shared parenting decree, * * * 3109.04(E)(2)(c), not R.C. 3109.04(E)(1)(a), was the relevant statutory provision for purposes of appellate review." *Bruns* at ¶ 14, citing *Lopez v. Lopez*, 10th Dist. Franklin No. 04AP-508, 2005-Ohio-1155.

{¶17} In *Lopez,* the Tenth District agreed with the reasoning of the Seventh District in finding that "based upon the plain statutory language of R.C. 3109.04(E), the provisions for modification and termination of parental rights and

9

responsibilities should be viewed as existing independently." *Lopez* at ¶ 25, citing *Dobran v. Dobran*, 7th Dist. Mahoning No. 97 CA 166, 1999 WL 689220 (Sept. 1, 1999). For that reason, the *Bruns* court ruled that R.C. 3109.04(E)(2) specifically allows for termination "in addition to a modification authorized under division (E)(1)" and, on termination, R.C. 3109.04(E)(2) requires the trial court to issue a modified decree in accordance with R.C. 3109.04(A) through (C) without mention of R.C. 3109.04(E)(1). *Bruns* at ¶ 15. We agree with this analysis, and in doing so, join every other district except for the Fifth District in finding that when one or both parties seek the termination of a shared-parenting plan, R.C. 3109.04(E)(2)(c) controls. *See, e.g., Massengill v. Massengill*, 2d Dist. Montgomery No. 18610, 2001 WL 283001 (March 23, 2001); *Drees v. Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197; *Redmond v. Wade*, 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877; *Rogers v. Rogers*, 6th Dist. Huron No. H-07-024, 2008-Ohio-1790; *Dobran*; *In re A.P.D.*, 8th Dist. Cuyahoga No. 100504, 2014-Ohio-1632; *Kannan v. Kay*, 9th Dist. Summit No. 26022, 2012-Ohio-2478; *Bruns,* 10th Dist. Franklin No. 18AP-259, 2019-Ohio-2296; *In re K.R.*, 11th Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454; *Hatfield v. Cornell*, 2018-Ohio-798, 106 N.E.3d 794 (12th Dist.). "Whether this statutory scheme implicates policy concerns is a matter for the legislature, not the judiciary." *Bruns* at ¶ 15, citing *Athens v. Testa*, 10th Dist. Franklin No. 18AP-144, 2019-Ohio-277, ¶ 65 ("The judiciary * * * does not appraise legislative choices.").

{¶18} Accordingly, a party seeking to terminate custody under R.C. 3109.04 has no obligation to demonstrate that a change in circumstances has occurred. Rather, the court must find that a termination of the shared-parenting plan was in the best interest of the child. *See, e.g., Bruns* at ¶ 12-15; *Drees* at ¶ 18; *Kougher v.*

*Kougher*, 194 Ohio App.3d 703, 2011-Ohio-3411, 957 N.E.2d 835, ¶ 15 (7th Dist.). This is in contrast to cases involving the *modification* of a shared-parenting plan under R.C. 3109.04, where a party must indeed demonstrate a change-in-circumstance for the court to proceed to a best-interest analysis. R.C. 3109.04(E)(1)(a); *see, e.g., Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546; *Bryan v. Bryan*, 161 Ohio App.3d 454, 2005-Ohio-2739, 830 N.E.2d 1216, ¶ 11 (1st Dist.).

{¶19} In determining whether shared parenting is in the best interest of the child, the trial court must consider "all relevant factors, including, but not limited to," the factors enumerated in R.C. 3019.04(F)(1), the factors enumerated in R.C. 3119.23, and all of the following:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F)(2)(a)-(e).

{¶20} The record demonstrates that the trial court expressly considered the factors listed in R.C. 3109.04(F)(2). The magistrate indicated that based on their

11

testimony the parents are entirely incapable of cooperating and making decisions jointly with respect to A.C. *See* R.C. 3109.04(F)(2)(a). The magistrate noted that while there was no evidence demonstrating that either parent did not encourage the sharing of love and affection toward the other parent, father did not facilitate a relationship with mother's relatives. *See* R.C. 3109.04(F)(2)(b). The magistrate found that there was no evidence of a concern for domestic violence. *See* R.C. 3109.04(F)(2)(c). The magistrate noted that mother and father live close enough to each other for shared parenting to work. *See* R.C. 3109.04(F)(2)(d). Finally, there was no guardian ad litem involved in this case. *See* R.C. 3109.04(F)(2)(e).

{¶21} Ultimately, the fact that the parents could not communicate, cooperate, and make decisions jointly persuaded the court to terminate shared parenting. The magistrate specifically referred to violations of the existing shared-parenting plan, which demonstrated the parents' antagonism towards cooperation: both parents enrolled A.C. into individual therapy without consulting the other parent, both parents had taken the other's parenting time, mother failed to provide father with a copy of A.C.'s medical insurance card, and father refused to allow A.C.'s grandmother to pick her up on behalf of mother. The magistrate accurately observed that mother's and father's inability to make joint decisions with respect to A.C. frustrated the purpose of shared parenting.

{¶22} Significantly, mother and father in effect conceded that they cannot cooperate and make decisions together. Mother testified that communication with father was strained and stressful. Father testified that communication with mother broke down three years prior, when mother found out that he had a girlfriend. Father claimed that he and mother have had a bad relationship since then, and cannot agree on anything. He claimed that if mother does not agree to something, "it just doesn't happen."

{¶23} Therefore, there was competent, credible evidence in the record to sustain the findings made by the magistrate, who observed the witnesses and their demeanor over the two days of hearings. This evidence supports the trial court's determination that termination of the shared-parenting plan is necessary to serve A.C.'s best interest. We cannot say that the trial court's decision to terminate the revised shared-parenting plan was unreasonable, arbitrary or unconscionable and, thus, an abuse of its discretion. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). For that reason, father's first assignment of error is overruled.

### Legal Custody of A.C.

{¶24} In his second assignment of error, father contends that the trial court erred in granting legal custody of A.C. to mother upon the termination of the revised shared-parenting plan. Father contends that the magistrate determined that the best-interest factors of R.C. 3109.04(F)(1)(a) through (j) were either not applicable or indeterminate for either parent, and subsequently based her decision on trivial findings. Father argues that in spite of overwhelming evidence that he is an exemplary parent, mother was awarded sole custody because father did not explicitly argue for sole custody of A.C. and did not know the name of A.C.'s doctor or dentist, and because the magistrate had concerns over father's truthfulness regarding A.C.'s enrollment in an after-school care program.

{¶25} After terminating a shared-parenting plan, the court issues a modified decree allocating parental rights "as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d). To allocate parental rights, the trial court must determine the best interest of the child. In

determining the best interest, the court "shall consider all relevant factors, including, but not limited to" the factors outlined in R.C. 3109.04(F)(1)(a)-(j). R.C. 3109.04(F)(1); *Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197, at ¶ 19. "R.C. 3109.04(A) allows only one parent to be named the residential parent and legal custodian when a shared-parenting plan cannot and should not be adopted. One parent must have primary rights and responsibilities, and only one parent can be designated legal custodian." *Andrew P. v. Jessy Z.*, 177 Ohio App.3d 837, 2008-Ohio-4124, 896 N.E.2d 220, ¶ 42 (6th Dist.); *see* R.C. 3109.04(A)(1).

{¶26} The record demonstrates that the trial court expressly considered the factors listed in R.C. 3109.04(F)(1)(a) through (j), plus additional factors as permitted by the Revised Code, in determining A.C.'s best interest. The magistrate recognized that mother expressly sought to be designated the custodial parent while father requested to continue shared parenting. *See* R.C. 3109.04(F)(1)(a). The magistrate did not conduct an in camera interview with A.C. *See* R.C. 3109.04(F)(1)(b). By all testimony, the magistrate found, A.C. gets along well with both of her parents and extended family. *See* R.C. 3109.04(F)(1)(c). The magistrate noted that A.C. has significant behavioral issues at school that began in preschool and suffers from anxiety, which the magistrate found to be a clear indication that she is not well-adjusted to her school environment. *See* R.C. 3109.04(F)(1)(d). However, both parents would like A.C. to remain in the private school where she is currently enrolled. There was no evidence of physical- or mental-health issues regarding either parent. *See* R.C. 3109.04(F)(1)(e). The magistrate recognized that neither parent has honored the court-ordered parenting time, but did not make an explicit finding on future concerns. *See* R.C. 3109.04(F)(1)(f); *see also Evans v. Evans*, 106 Ohio App.3d 673, 666 N.E.2d 1176 (12th Dist.1995) (when there is no evidence to the contrary,

an appellate court will presume that trial court considered all relevant factors in determining custody). Finally, the court recognized, and the record reflects, that the factors listed in R.C. 3109.04(F)(1)(g) through (j) were not applicable to the present case.

{¶27} In addition to the statutory factors, the magistrate took into account that father did not know the name of A.C.'s doctor or dentist, and that she had concerns regarding father's truthfulness. As an example, the magistrate noted that father testified "he did not know who set up the Salvation Army after school program in court but his answers in discovery made it clear he had set it up."

{¶28} In this case, there is no doubt that either parent would be a fit person for custody of A.C. After all, the magistrate's consideration of the statutory factors does not give significant weight to one parent over the other. One determinative factor was that mother was the only parent expressly requesting to be the custodial parent. Father argues that this factor should not have weighed against him. However, R.C. 3109.04(F)(1)(a) requires the court to consider the parents' wishes on custody. Other determinative factors appear to be the additional findings regarding father's lack of knowledge of A.C.'s doctor or dentist and father's truthfulness. Father argues that these nonstatutory findings are inconsequential, but in a case where a finding for either parent could be premised upon the record, all relevant factors relating to the best interest of the child come into play. The record supports questioning father's truthfulness, particularly where his testimony differs from his response in discovery.

{¶29} The standard of review requires us to give deference to the trial court's resolution of the issues and to the "determination made between competing considerations." *Sayre v. Furgeson*, 2016-Ohio-3500, 66 N.E.3d 332, ¶ 49 (3d Dist.), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

When an award of custody is supported by some competent, credible evidence, that award will not be reversed by a reviewing court as being against the weight of the evidence. *Bechtol*, 49 Ohio St.3d at 23, 550 N.E.2d 178. We are mindful that custody issues are some of the most difficult and agonizing decisions a trial court must make. *Davis*, 77 Ohio St.3d at 418, 674 N.E.2d 1159. Furthermore, " '[t]he knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by the printed record.' " *Bechtol* at 23, quoting *Trickey v. Trickey*, 158 Ohio St. 9, 13-14, 106 N.E.2d 772 (1952).

{¶30} Under this standard we hold that the trial court did not abuse its discretion in analyzing all relevant factors, including the factors of R.C. 3109.04(F)(1), and determining that designating mother as sole legal custodian would be in A.C.'s best interest. Accordingly, the trial court did not err in designating mother as the residential parent and legal custodian of A.C. after terminating the revised shared-parenting plan. With this conclusion, we overrule father's second assignment of error and affirm the judgment of the trial court with respect to the termination of shared parenting and the award of custody.

### Child Support

{¶31} Though neither the parties nor the trial court raised the issue of child support, we must address it. R.C. 3109.04(A)(1) requires the trial court to divide between the parents the responsibility to provide support for the child. Additionally, pursuant to R.C. Chapter 3119 and *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), a trial court must complete a child-support worksheet and make that completed worksheet a part of the record when it is making a child-support determination. This requirement is mandatory and must be followed literally and technically in all material respects. *Marker*

at 142. The trial court is to follow this requirement in order to ensure that its order is subject to meaningful appellate review. *Id.* The failure to do so constitutes an abuse of discretion. *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), paragraph one of syllabus.

{¶32} Here, the trial court failed to make a determination on child support. Even if it chose to adopt the provision on child support from mother and father's revised shared-parenting plan, wherein the parties agreed that child support would be zero dollars, it must say so. Thus, we find that the trial court's failure to make findings on child support and complete a worksheet is error. The judgment of the trial court is affirmed. We remand this matter for further proceedings on the issue of child support consistent with law and this opinion.

Judgment accordingly.

**MOCK, P.J.,** concurs.
**BERGERON, J.,** concurs in judgment only.

Please note:

The court has recorded its own entry on the date of the release of this opinion.